[File Nos. 5997, 5998.]

CONSTANCE FINGER, a Minor, by E. A. Finger, Her Guardian, Respondent, v. GEORGE MASSAD and James Massad, Appellants,

and

ELLA FINGER, a Minor, by E. A. Finger, Her Guardian, Respondent, v. GEORGE MASSAD and James Massad, Appellants.

(240 N. W. 917.)

Opinion filed February 3, 1932.

*Crawford, Cain & Burnett,* for appellants.

*H. A. Mackoff,* for respondent.

BURKE, J. On the 10th day of October, 1929, about six o'clock in the evening, E. A. Finger, together with his daughters, Constance, eleven years of age, and, Ella, thirteen years of age, driving with a team and buggy, three and one half miles west of Dickinson, North Dakota, collided with an automobile truck belonging to the defendant, George Massad, and driven by James Massad. Constance and Ella were injured and each brought an action by E. A. Finger, as guardian, against the defendants for personal injuries.

The cases were tried as one action and the jury returned a verdict for Constance Finger in the sum of $3,750 and in favor of Ella Finger in the sum of $3,500, upon which, judgment was duly entered. There were motions for judgment notwithstanding the verdict or for a new trial in each case, which were denied and from the judgments and orders denying motions for judgment notwithstanding the verdict or for a new trial the defendants appeal.

The insufficiency of the evidence to justify the verdict is specified as an error, but the defendants do not seriously contend that the evidence is not sufficient to justify some recovery.

We have read the evidence very carefully and are of the opinion that there is no merit in this contention, as there is abundant evidence to justify the verdict of the jury on the question of defendants' negligence. The defendants do seriously contend:

1st. That the damages assessed and given in favor of the plaintiffs and against the defendants are excessive and were given under the influence of prejudice and passion, and a new trial should have been granted upon that ground.

2nd. That the physician was permitted to answer questions concerning the condition of the plaintiff as to their permanent injury, which testimony was based and given upon the complaints of the plaintiffs when such examination was made for the purpose of giving testimony.

3rd. The hypothetical questions put to the doctors were improper hypothetical questions.

In his brief the defendant states in substance that the testimony of Dr. Radl, who treated the injured parties at the hospital, show that Constance was in poor general condition, her pulse was rapid and

weak, the skin was cold and clammy, and she was in what is known as shock. There was tenderness and a slight rigidity in the left upper quadrant of the abdomen. The patient was also in an anemic condition. There is a possible injury to the kidney. An examination showed a disease of the kidney, but there was a direct conflict as to the presence of such kidney infection as late as the fall of 1930, and the question of permanent injury is doubtful.

That Ella Finger received a blow on the left temporal frontal region and remained unconscious for a period of about five hours. There was a large bluish tender swelling over the left eye and in the left temporal frontal region and a tenderness over the left hip and left iliac crest.

It is the contention of the appellant that the permanent injury to Ella was also doubtful. In answer to a hypothetical question, Dr. Radl, who treated the plaintiffs, gave as his opinion that the accident caused the injuries.

Dr. Nachtway, also treated the plaintiffs at the time of the injuries, and testified that Constance was suffering from a bruise to the body localized chiefly in the left upper quadrant of the abdomen and in her kidney area, and this was characterized by pain, temperature and vomiting. He treated her while she was in the hospital for about ten days when she left the hospital, but was not cured. On the 22nd day of October, 1929 she started to complain of tenderness and soreness in her upper abdomen and her left kidney region, and there was marked nephritis, with blood cells, pus and albumen. Her trouble was nephritis, an inflammation of the kidneys, very likely caused by the injuries. He continued to doctor the patient about once a week up to the time of the trial, on the 5th day of March, 1931. He examined her on November 28th, 1930 and she was still suffering from nephritis. In answer to a hypothetical question the doctor gave as his opinion that the nephritis was caused by the accident and that in his opinion it was permanent. On cross-examination he was asked:

"Q. Was there just one bruise, doctor?

"A. No. I would say she had general bruises, but that was the one that she called particular attention to; there was where all the attention was focused to, on the back and in the upper kidney area.

"Q. There was external evidence of the bruise?

"A. Yes, there was that in the same location.

"Q. Both back and front?

"A. Yes."

The doctor testified that while at the hospital she was suffering an extreme amount of pain for the first four or five days with a constantly rising temperature. "For a time it seemed as if the condition were getting worse and would need surgical intervention. Her temperature rose to almost 104. She began to show some signs at that time of possible peritonitis or a possible shattered kidney. We were debating and consulting relative to a peri-nephritic abscess, and following this it reached its climax at about the fifth day. However, her temperature suddenly dropped and from that time on she began to make a better recovery. While this was approaching a climax, she had more or less vomiting." Questioned on cross-examination he said:

"Q. Does her condition in any way interfere with her following the usual pursuits of a child of her present age?

"A. It does.

"Q. Will it continue to do so?

"A. If her nephritis continues to progress as it has, it will continue to do so in more marked degree."

"Her physical condition would not permit her to go to school and under my advice she did not go during the school year of 1929." "At the time I examined Ella, she showed a bruise to her head, temporal frontal region; she had a subconjunctival hemorrhage, numerous bruises and ecchymosis scattered throughout the body." "I believe she had injuries on the left hip and her left arm. In my opinion an injury to the head that causes a person to become unconscious for a period of about five hours is considered a serious injury. She has complained of a faulty memory since."

In answer to a hypothetical question the doctor testified that the accident in his opinion was the cause of the injury, and that it could be the producing cause of a faulty memory, and the faulty memory might be permanent. On cross-examination the doctor was asked:

"Q. Would you expect that a blow on the head which caused un-

consciousness for five or four hours would affect the memory in any way?

"A. It is possible.

"Q. It's not likely, though, is it, doctor?

"A. It's quite likely.

"Q. Would this blow—a blow of this kind affect the eyesight?

"A. It could."

Dr. Spear examined Ella's eyes on January 4, 1930. She had double vision at that time. The muscles of her left eye were partly paralyzed, causing a squint, which caused the double vision of which she complained. The lid of the left eye did not close as it should normally the way the lid of the right eye did. When she closed both eyes the lid of the left eye would not fully close, it stayed partly open. He prescribed rest and a correction with glasses. In answer to a hypothetical question the doctor testified that the accident was the cause of the injury, and in this particular case the trouble will remain permanent.

Dr. Chernasuk, for the defendant, testified that he examined Constance Finger on October 25, 1930, that was just a little more than a year after the accident, and he found no evidence of nephritis. At the same time he also examined Ella Finger and gave as his opinion that the patient was entirely normal.

As the appellant states, there is a conflict in the medical testimony, but the question of the injuries and their permanency in both cases was for the jury. It is clear, from the evidence, that the plaintiffs were badly injured and while the verdicts are generous, we cannot say from the record that the verdict in either case was the result of passion or prejudice.

There is no merit to the contention that "the physicians were permitted to answer questions concerning the condition of the plaintiffs as to their permanent injuries, which testimony was based and given upon the complaints of the plaintiffs when such examination was made for the purpose of giving testimony."

The expert witnesses, who testified for the plaintiffs, had all treated the plaintiffs. Two of them from the beginning and one of them continuously up until the time of the trial. Dr. Spear first treated

Ella Finger in January, 1930, and his testimony is based upon an examination of the eyes and treatment as shown on pages 316 and 317 of the record and the hypothetical question containing the facts, which he testified to, together with the facts testified to by the other doctors and witnesses for the plaintiffs, and his answer, on page 324 of the record was "In this particular case, in my opinion, the trouble will remain permanent."

In the case of Newton v. Gretter, 60 N. D. 635, 236 N. W. 254, this court said: "The testimony is that the particular injuries under which the plaintiff was suffering at the time of the trial would probably continue permanently. It seems to be well settled that questions and answers as to what is likely or liable to be the result of the injury are not speculative or conjectural." We also quote from 11 R. C. L. p. 609, § 33, "A practicing physician, however, who has attended a patient, or examined him for the purpose of testifying, may state his opinion as to the nature of the disease or disability from which he was suffering, the facts which probably produced or might have produced his condition, the physical or mental effects to be expected from a certain injury or disease, the probable continuance and future course of an existing disease or disability." The hypothetical questions were well within the rule and there was no error in the admission of the testimony.

Appellants do not point out, either in the record or in the brief and argument, any defects in the hypothetical questions nor do they call attention to any specific leading questions overruled under objection. The whole brief and argument is devoted to the one question of excessive verdicts, the result of passion and prejudice. We have, however, carefully examined the record and do not find any errors in the overruling of objections to hypothetical questions or any abuse of discretion in permitting leading questions.

The judgment in each case is affirmed.

CHRISTIANSON, Ch. J., and BIRDZELL, NUESSLE and BURR, JJ., concur.